[No. 15029. Department Two. February 27, 1919.]

## R. N. LEEZER, *Respondent*, v. S. S. FLUHART *et al.*, *Appellants.*[1]

GUARANTY (9)—STOCKHOLDERS' GUARANTY OF CORPORATE DEBT— CONSTRUCTION—EXTENT OF LIABILITY. A contract whereby stockholders bound themselves to pay the full amount of the company's debt or forfeit the amount of stock set opposite their names, reciting that "this guarantee of payment" is in satisfaction in full of the claim and lien against the company, is a promise to pay in money, to which the privilege of taking stock is collateral, the option being in the promisee; especially where the promisors, in tendering the stock, reserved the right to redeem it at its redemption value.

CORPORATIONS (55)—STOCK—TRANSFER—CONTRACT — PREFERENCES. A creditor, accepting preferred stock upon a stockholders' guaranty of the company debt, takes the same with all the privileges accorded by the by-laws providing for the retirement of preferred stock by payment of the purchase price with the privilege of receiving common stock, and his relation as a preferred stockholder would not be severed by a tender of the amount of the debt after he had closed the account.

GUARANTY (13)—DISCHARGE—PAYMENT OR SATISFACTION—TENDER. Under a contract whereby stockholders guaranteed to pay the company's debt in money or by the forfeiture of an aggregate amount of stock, a tender of the stock reserving the right to redeem it under a by-law of the company would be a discharge of the guaranty, since the terms of the by-laws could not be injected into the contract.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 24, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract, after a trial on the merits. Affirmed.

*Revelle & Revelle,* for appellants, contended, among other things, that the promise was in the alternative, with the choice in the promisor. 6 Ruling Case Law, p. 860; 13 Corpus Juris, p. 629; 7 Am. & Eng. Ency.

[1] Reported in 178 Pac. 817.

Law (2d ed.), p. 125; 1 Sutherland, Damages (Berryman's 4th ed.), § 282; *Standard Distilling Co. v. Consolidated Adjustment Co.,* 157 Ill. App. 215; *Smith v. Durell,* 16 N. H. 344, 41 Am. Dec. 732; *Smith v. Sanborn,* 11 Johns. (N. Y.) 59.

If the choice were in the promisee, he must give notice of his election and make demand before he can sue. 7 Am. & Eng. Ency. Law (2d ed.), p. 125; 13 Corpus Juris, p. 629; *Center v. Center,* 38 N. H. 318; *Williams v. Triplett,* 3 Clarke (Iowa) 518; *Barker v. Jones,* 8 N. H. 413; *Manvel v. Holdredge,* 45 N. Y. 151.

*Elias A. Wright* and *Sam A. Wright,* for respondent. The presumption is that the debt was to be paid in money, and that the stock was collateral. *Fell v. H. Fell Poultry Co.,* 69 N. J. L. 429, 55 Atl. 236; *Borland v. Nevada Bank of San Francisco,* 99 Cal. 89, 33 Pac. 737, 37 Am. St. 32; *Patchin v. Swift,* 21 Vt. 292; *Plowman & McLane v. Riddle,* 7 Ala. 775; *Dumas v. Hardwick,* 19 Tex. 238; *Ramsey v. Walthan,* 1 Mo. 395; *Rewrick v. Goldstone,* 48 Cal. 554.

The party having the choice, must make election before default. 2 Parsons, Contracts (9th ed.), p. 804; James, Option Contracts, § 1118; Elliott, Contracts, §§ 1885, 1886; 6 Ruling Case Law, p. 860, § 247; *Choice v. Moseley,* 1 Bailey (S. C.) 136, 19 Am. Dec. 661; *McNitt v. Clark,* 7 Johns. (N. Y.) 465.

Chadwick, C. J.—Respondent held a certain lien claim in the sum of $1,065.18 against a mining company in which all the parties to this action were stockholders. Foreclosure being threatened, appellants delivered to respondent a writing as follows:

"Dr. R. N. Leezer,              September 28th, 1917.
    "Seattle, Washington.
"Dear Sir: For the purpose of effecting a settlement conforming to demand that all claims shall be

settled by an appropriation of $15,000 now available, practically all of which is required for settlement of accounts and notes long past due in the state of Oregon, *the undersigned hereby bond themselves to pay the full amount of the balance due you,* Dr. R. N. Leezer, from the United Copper Company, in cash on or before April 2nd, 1918, *or forfeit* to you *the aggregate amount of stock,* preferred of the United Copper Company, set after our names hereto respectively, and this letter shall constitute an order upon the said United Copper Company for delivery of said stock without further notice or demand, the same to be charged to our respective accounts.

"It is understood *this guarantee of payment* is acceptance upon your part of satisfaction in full of your claim against the said United Copper Company and that you will execute a release to the lien now filed by you against its properties in Jackson county, Oregon, at once.

"S. S. Fluhart .................4,000 shares.
"Wm. Reinecke ..................2,000 shares
"B. E. Fluhart ..................4,000 shares
"Signed and delivered in the presence of
      "A. J. Hillman, Witness.
      "F. Meade, Witness."

We have italicized the parts of the contract which will call for reference and discussion. The money was not paid when due, and this action was brought to recover a money judgment.

It is the contention of the appellants that the contract is not an absolute promise to pay money, but is an agreement to pay in money or in the preferred stock of the company, the option being with the promisors; that a failure to pay in money is an exercise of the option; that, therefore, the contract stands as an order for the stock, and that they are thereupon absolved from all personal liability.

When respondent brought suit, appellants caused a certificate for 10,000 shares of the preferred stock of

the company to be issued, and made tender of it by leaving it at the home of respondent during his absence. The stock so tendered was indorsed by the secretary of the company, with a notation reserving to the company the right to redeem the stock at any time upon payment of 10.45 cents per share.

A great many cases are cited on either side upon the law of an election to pay in one way or another as may be provided by contract; and we may admit the general rule that, when the condition of an obligation is in the disjunctive, it may be discharged by the performance of either of the enumerated acts, at the election of the obligor. 6 R. C. L. 860; 13 C. J. 629. But, after all, cases of this character are not to be decided upon some abstract principle of the law, but upon the essence of the contract as it may be gathered from its context. When so considered, we cannot give the promise the character claimed for it. The original demand was against the mining company. It was secured by a lien. That a fund of $15,000 might be appropriated to the payment of other claims, appellants made themselves personally liable. They bound themselves to pay the full amount of the balance due to the respondent on or before a certain date, *or forfeit* the stock which respondent might upon show of the contract demand. The option was in the promisee. Furthermore, the contract is a guarantee of payment—which, in the absence of qualifying terms, must be construed to be a payment in money—in consideration of a release of a lien then on file and subject to foreclosure.

The contract is not by its terms a promise to pay in money or stock, but a promise to pay in money to which the privilege of taking the stock is collateral. The meaning of a contract may frequently be deter-

mined by a resort to the doctrine of probability, by answering the question, What is the common sense of it? It is not likely that respondent, having a lien secured by all of the property of the company, would have put himself in a worse position; that he would have sold a right secured by all the physical assets of the company for a few shares of stock representing an infinitesimal part of the property of a company then unable to pay its debts in money. The stock is collateral to the promise to pay in money, and if it had been received by respondent, he must have treated it as collateral. Taking the contract as it reads, we have no doubt that appellants would have had a right to insist upon a foreclosure and sale of the collateral if it had been accepted by respondent and it had increased in value.

Our conclusion is strengthened by the fact that the stock tendered provided that it could be redeemed for the amount of respondent's claim. The secretary of the company says that such was the meaning and intent of the indorsement, although an error of two-tenths of a cent on each one dollar was made in writing the redemption value. But it is said that respondent cannot profit by the claim of this privilege, or be heard to say that the tender was conditional, for the reason that the contract calls for preferred stock and that the by-laws—of which respondent, being a stockholder, had notice—provide that preferred stock might be redeemed by the repayment of the purchase price. We do not so read the by-laws: It is provided:

"The preference shares, when issued . . . shall convey the following expressed preference to the holders thereof, to wit:

"The preference shares confer upon the holders thereof the right to participate in the exclusive dis-

tribution amongst themselves, the whole of the profits declared for dividends until the total dividends so paid shall amount to one hundred per cent of the sum paid therefor to this company as shown by its books of account together with interest at the rate of seven per cent per annum thereon or on so much thereof as shall from time to time remain invested. Said preference stock shall cease to have any preference from the day and date of notice by the company that it is prepared to make payment in full as aforesaid with accrued interest and to issue one share of common stock for and in lieu of each share of preference stock the company may elect to retire. . . . The holders of the preference shares shall be protected to the extent of one hundred per cent of the sum paid for said preference shares to this company, as shown by its books of accounts, without interest, as against the common shares of the company in case of dissolution or liquidation in that the said preference shares shall first participate in the distribution of the proceeds derived from the sale of the assets of the company; and shall rank on an equal basis with the common shares in the sum remaining.''

The thing here attempted is a reservation of the right to retake the stock upon payment from whatever source of the amount of a debt which the company had attempted to assume, and without a grant of the privilege of receiving common stock, share for share, as is provided in the by-laws. Having invoked the by-laws, appellants are bound by them; and were respondent to be held to an acceptance of the stock, he would have a right to insist upon redemption out of the dividends, with attendant privileges. His relation to the company as a preferred stockholder could not be severed by a tender of the amount of his debt. The conduct of appellants in tendering the stock with a reservation of the right of redemption by paying the amount of the debt cannot be explained upon any theory other than that they regarded the stock as col-

lateral to the promise to pay in money and were entitled to any advantage if the stock should perchance increase in value.

Furthermore, the contract sued on was not made by the company, but by the appellants, and upon the theory now advanced by them respondent would be entitled to his money or the stock—not the stock hampered by any conditions or redemption features, but the "aggregate" amount of the stock. If the company attempted to assume the obligations of the contract, as it is said that it did, it must be bound by its terms. It could not inject its by-laws as a limitation upon the right of respondent to forfeit *the aggregate amount* of the stock—that is, 10,000 shares. If the contract calls for payment in the alternative respondent would be entitled to his money or ten thousand shares of stock, "the aggregate amount." He would be entitled to close the account, and, when appellants either directly or indirectly undertook to hold it open by asserting a right of redemption, they affirmed and acted upon the contract as one calling for payment in money with a promise to hold and deliver 10,000 shares of the company's stock as collateral.

Affirmed.

MOUNT, TOLMAN, and PARKER, JJ., concur.