[No. 23277. Department Two. December 28, 1931.]

J. F. CHERMAK, *Respondent,* v. P. J. TAGGARES, INC., *Appellant.*[1]

*C. W. Fristoe* and *George O. Beardsley,* for appellant.

*Bruce E. McGregor* and *Bonsted & Nichoson,* for respondents.

[1]Reported in 6 P. (2d) 380.

HOLCOMB, J.—This action was brought by respondent and tried upon a second amended complaint alleging, among other things, that, in April, 1929, the parties entered into a written contract whereby respondent agreed to deliver to appellant two cars of seed potatoes for exchange, and that appellant was to pay therefor in the fall by delivering in exchange four cars of potatoes or pay for the same on the basis of fifteen dollars per ton for four cars, or thirty dollars per ton for the amount of seed potatoes furnished; that the option of determining whether the exchange should be accomplished by delivering potatoes or paying in cash rested with respondent; that respondent had elected to receive potatoes in exchange instead of cash, had demanded the same, and that appellant had refused to deliver. The market value of the potatoes at the time the alleged exchange should have been consummated, October 1929, was alleged and damages demanded on the basis thereof in the sum of $3,240 from appellant.

For answer, appellant pleaded affirmatively that it had refused to buy, and had counter-offered to buy one car of seed potatoes if respondent would furnish it two additional cars on an exchange basis whereby appellant could put them out to the growers, and payment would be made to respondent on an exchange basis of two for one at the option of appellant, cash at fifteen dollars per ton at the rate of two for one, or the rate of thirty dollars per ton for the actual seed furnished.

Issue was joined principally upon the question of who had the option to determine whether payment would be made by appellant by delivery of potatoes or by cash.

The case was tried before Judge Truax, taken under advisement, and Judge Truax was accidentally

drowned on the same day. Thereafter, by stipulation of counsel, the case was submitted to Hawkins, Judge, on the record, statement of facts and oral argument. Judge Hawkins interpreted the contract in favor of respondent, made findings of fact, conclusions of law, and entered a judgment in his favor for $2,700. This sum was based upon the value of potatoes at forty dollars per ton in October, 1929, which was well within the evidence relating thereto, from which was deducted five dollars per ton as called for by the contract.

The record, including exhibits, has been entirely and carefully read.

Appellant, managed entirely by P. J. Taggares, president and general manager, deals in produce, including potatoes, at Prosser. He has been in that business in that locality since 1918. Respondent is a farmer living on a ranch in Idaho. In the spring of 1929, he had five cars of netted gem certified seed potatoes, grown on his farm in Idaho, for sale. He went first to Yakima, Washington, in April, for the purpose of disposing of this seed. Two car loads had been sold by him before he met appellant. On April 13, respondent called upon Taggares at his office in Prosser, and attempted to sell the remaining three cars to him, but no agreement was then reached. A tentative offer was made, however, by appellant to the effect that appellant would buy one car load of the seed potatoes for seventeen dollars a ton cash, f. o. b. Craigmont, Idaho, provided respondent would ship him the two remaining cars on an exchange basis of two for one, or four cars October, 1929, delivery. Respondent returned to Idaho, submitted this offer to his banker at Lewiston, Idaho, and on the same day the banker, Mr. Emerson, assistant cashier of the First National

Bank of Lewiston, prepared and sent to appellant a telegram which reads:

"P. J. Taggares, Inc.,                    April 13, 1929.
"Prosser, Washington.
"Will ship one car red tag certified seed potatoes seventeen dollars cash Craigmont and two additional cars same grade basis two for one. Wire confirmation and shipping dates desired.
                                        "J. F. Chermak.
"Care First National Bank, Lewiston, Idaho."

Upon receipt of this telegram, appellant replied by telegram as follows:

                    "Prosser, Wash., April 13, 1929.
"J. F. Chermak, Care First Nat'l Bank,
"Lewiston, Idaho.
"Received your wire call us up today.
                                        "P. J. Taggares, Inc."

Emerson then called appellant on behalf of respondent, and both he and Taggares testified that, in the telephone conversation, it was agreed that appellant should prepare and forward contracts covering the sale of the three cars. Appellant testified that, in his conversation with respondent at Prosser on April 13, the price of fifteen dollars per ton for the four cars to be delivered in the fall was mentioned. Respondent in his testimony disputed that, and said that the only consideration mentioned for the two cars of seed was delivery of four cars combination grade, October delivery. Taggares testified also that, in his telephone conversation with Emerson, the fifteen dollars per ton was mentioned. Emerson in his evidence denied that any mention was made of fifteen dollars per ton in that conversation.

The contracts covering the two car loads of seed potatoes and the contract for the one car sold for

seventeen dollars per ton cash were prepared by appellant, enclosed in an envelope with a letter, and forwarded to respondent, care of the First National Bank, Lewiston, Idaho. There is nothing involving the car purchased for seventeen dollars per ton cash in the case before us. The contract, in two separate instruments, reads:

"Prosser, Wash. Date April 15, 1929.
"J. F. Chermak, Craigmont, Idaho.
"We confirm purchase from you today on basis No. 1 quality as follows: 2 cars Red Tag Netted Gems seed potatoes 1 to 12 oz. at $............per............ F. O. B. Prosser for exchange May 25, 1929 delivery. Subject to Washington State Grade and Trading Rules. Advance on contract J. F. Chermak to pay P. J. Taggares $5.00 ton on 2 cars this fall.
"Yours truly,
"Accepted: "P. J. Taggares, Inc.
"J. F. Chermak. "By P. J. Taggares."

"Prosser, Wash. Date April 15, 1929.
"J. F. Chermak, Craigmont, Idaho.
"We confirm sale to you today on basis No. 1 quality as follows: 4 cars of 75 25 combination grade potatoes for exchange or at $15.00 per ton F. O. B. Prosser, Washington October delivery. Subject to Washington State Grade and Trading Rules. Advanced on contract ............................... Yours truly,
"Accepted: "P. J. Taggares, Inc.
"J. F. Chermak. "By P. J. Taggares."

The letter enclosed with the other instruments reads:

"Prosser, Washington, April 15, 1929
"J. F. Chermak
"c/o First National Bank
"Lewiston Idaho.
"Dear Sir:
"Inclosed find contract for the three cars potatoes.
"On the 4 cars to be delivered this fall we are fixing out contracts for that just like this contract. Two to one or fifteen dollars ($15.00) on this contract.

"I think this is best so if the grower don't want to make grade we can make him pay us fifteen dollars ($15.00) ton on potatoes.

"I think that be best for you people to.

"Yours very truly

"P. J. Taggares, Inc.,

"P. J. Taggares."

Respondent noticed the fifteen dollar provision in the second instrument set forth above and also the reference to the fifteen dollar provision in the letter above quoted. He talked with his banker concerning the fifteen dollar provision and it was interpreted by both the banker and respondent that respondent had the option in the fall of accepting potatoes or demanding fifteen dollars per ton on the four cars to be delivered. With that understanding and belief, respondent signed the contracts and shipped the two cars of seed potatoes for exchange, paying the freight therefor to Prosser. Cars of potatoes average eighteen tons per car. Appellant testified that he wrote the letter to explain the option in the contracts.

At the outset, it is manifest that the contract, consisting of the first two instruments quoted herein, even as attempted to be explained by the letter accompanying the instruments, is remarkably ambiguous and confusing. Had appellant, who made the contract itself, desired to make the contract more ambiguous as to who had the option respecting how the contract should be fulfilled, it certainly did so by the letter it sent along to explain it.

It is to be remembered that respondent was not a dealer in produce, while appellant had been for years. Had appellant intended respondent to clearly understand that the option to take potatoes in the fall at the ratio of two for one should rest in appellant, it could easily have done so, but did not. Respondent had a

right to construe the contract and the explanatory letter as he and his banker did, or, if not, there never was any meeting of the minds of the parties.

Appellant quotes from the syllabus of *Heaton v. Smith*, 134 Wash. 450, 235 Pac. 958, as follows: "Where the parties have given their own interpretation of the words of a contract, it should be controlling." But this does not mean the interpretation of a contract by a party on the one side only. If both parties had given it that construction, which was not the case, respondent would clearly have no right of action on an alleged option to take two cars for one.

Appellant also cites *Jacobs v. Teachout*, 126 Wash. 569, 219 Pac. 38, and quotes therefrom as follows: "Such intent of the parties is to be deduced from the terms of the contract and the situation existing when it was entered into."

We do not find the exact language as quoted by appellant in that decision, although that was its effect. We further said in that case:

"It is also a rule for the construction of contracts that, where the language used is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not enter into, the interpretation which makes it a rational and probable agreement must be preferred. 6 R. C. L. 841, § 230. . . .

"If the construction contended for by the appellant is given the contract, it would place it within his power to practically nullify the provision."

In *Mikusch v. Beeman*, 110 Wash. 658, 188 Pac. 780, cited by appellant, we held that, in construing a contract, the court will place itself in the position of the parties by admitting evidence of the surrounding facts, the nature of the subject matter, the relation of the parties and the objects sought; that language em-

ployed in a contract should be construed more strictly against the party using it.

Remembering that appellant prepared the contract and the explanatory letter, and was one with considerable experience in such matters, while, so far as the record shows here, respondent was inexperienced in making such contracts, or, at any rate, in framing such instruments, the uncertainties should be interpreted in favor of respondent and against appellant.

In *Leezer v. Fluhart,* 105 Wash. 618, 178 Pac. 817, cited by appellant, we referred to the fact that a great many cases had been cited on either side upon the law of election to pay in one way or another, as may be provided by contract, and we admitted the general rule that, when the condition of an obligation is in the disjunctive, it may be discharged by the performance of either of the enumerated acts, at the election of the obligor, 6 R. C. L. 860, 13 C. J. 629 (texts here cited by appellant), and further observed:

"But, after all, cases of this character are not to be decided upon some abstract principle of the law, but upon the essence of the contract as it may be gathered from its context."

In an additional list of authorities, filed by appellant after argument in response to a question by a member of this court as to whether, when optional methods of payment of contracts were provided, such options were generally for the benefit of the obligor or debtor, appellant quoted at length from texts contained in 6 R. C. L. 912 and 913; 24 R. C. L. 439, and 13 C. J. 586 and 629. The text from 13 C. J. 586 which is quoted fairly reflects the propositions contained in the other texts, and is as follows:

"When a question arises as to whether the debtor has an election to pay the debt in specific articles or in money, it must be determined from the intention of the parties, as evidenced ·either by the terms of the con-

tract, its subject matter, or the nature of the indebtedness. Ordinarily, where it is apparent that the parties are dealing about a money indebtedness, the contract will be construed as affording an election. So where the prices of the articles are fixed in monetary terms, the debtor ordinarily has the right either to pay in such articles or in money; but where monetary terms are employed necessarily as the mode of expressing quantity and proportion, but not for the purpose of expressing values, no implication as to the right of election arises.''

Id., 629:

''Where the promise is in the alternative to do one or the other of certain things, the promisor is bound to perform in one or the other of the ways specified. If the promisor has the election, he can be charged with a breach only when he refuses to perform both. As a rule the person who is to perform the contract has a right to elect which one of the alternative promises he will perform; *but the election may be expressly given to the promisee.*'' (Italics ours.)

The italicized words were omitted in the quotation by appellant.

If the option was not given the promisee (respondent) in this case, it was so understood by respondent, and was manifestly intended to be so understood by appellant. It made a number of contracts with growers in that locality on the same basis—for exchange, two tons for one.

Other cases from this and other courts are cited by both parties, which it would be useless to discuss. We are satisfied that the trial court placed the only reasonable construction that could be placed upon the contract before us.

The judgment is affirmed.

MAIN, BEALS, and MILLARD, JJ., concur.

TOLMAN, C. J. (dissenting)—I can see in the contracts and the letter which accompanied them no ex-

press or implied election or option given to the promisee. The language used is inapt and lacks clarity, but it certainly gives the promisee no election; but, fairly construed under the conditions existing when it was written, the option runs to the promisor. I therefore dissent.