READ v. FORCED UNDERFIRING CORPORATION et al.
CLARK v. FORCED UNDERFIRING CORPORATION
et al.

Nos. 5161, 5162. Decided November 8, 1933. (26 P. [2d] 325.)

*P. C. Evans,* of Salt Lake City, for appellants.

*Fabian & Clendenin,* of Salt Lake City, for respondents.

BATES, District Judge.

By stipulation of counsel and order of this court these cases were consolidated for "briefing, argument and submission on appeal." The assignments of error being substantially the same, both appeals are considered and disposed of by this opinion. However, the facts in the Read case only are recited herein.

Plaintiff and appellant J. M. Read brought this action to recover commissions on sales made by the branch of the defendant corporation operating in Salt Lake City.

The defendant corporation was organized in 1925. The other defendants named were the stockholders of the corporation. Each one of the stockholders subscribed for and still owns 1,000 shares of the stock which is all the outstanding stock of the corporation. These stockholders are also the directors. The business of the company from the time of its organization until it quit doing business in 1930, consisted of the buying, selling, installing, and repairing of automatic stokers. The plaintiff was in the employ of the defendant corporation as sales manager for the Salt Lake division in the year 1928. January 26, 1929, he was re-employed for the calendar year of 1929, under the same terms as he was employed during the year 1928. The 1928 contract is embodied in a letter written to plaintiff by defendant, the tenor of which, in so far as material in this case, is: ·

"Effective January 1, 1928, your salary to be $400.00 per month and you at the end of the year to receive ten per cent of the net profits of the Salt Lake division for the year, 1928. These net profits to be computed after proper recognized bookkeeping practices have been observed; that means charging off bad debts, depreciation, losses, etc., and your percentage of the net to be calculated and charged into operating expenses as an expense item, or from the standpoint of the stockholders of the company, money paid to you, whether called commissions, salaries or percentage of the net are all a business expense and must be computed before we can arrive at the stockholders net profits."

Plaintiff performed his part of the contract satisfactorily to the defendant and was paid his salary. February 12, 1929, the board of directors of the defendant corporation adopted a resolution as follows:

"Discussion on supervision of the different branches of the business, brought out the fact that the business growing as it has grown in the past, will require more constant supervision and more time spent on the same. In view of this it was decided that the responsibility of the business of the different divisions should be divided among the directors so that more careful supervision could be maintained; in accordance with this W. W. Murdock offered a motion that H. H. Kurtz, as general manager, receive $1350.00; that Lynn H. Thompson as president and managing director of the Denver Division, receive $500.00 per month; that Ezra T. Thompson as managing director of Chicago, receive $500.00 per month; that C. R. Thompson as managing director in Omaha, receive $500.00 per month; that H. Ross Brown as managing director in Salt Lake receive $500.00 per month; that W. W. Murdock as secretary, treasurer and credit manager receive $500.00 per month."

During the year 1929, the total income of the Salt Lake division was $197,661.58. The following items of expense are shown by the evidence:

| | |
|---|---:|
| Cost of stokers | $125,933.78 |
| Stock installation | 9,754.49 |
| Servicing | 634.34 |
| Installation supplies | 86.33 |
| Stoker parts | 4,163.19 |
| Upkeep of automobiles | 1,995.95 |
| Traveling expenses | 1,659.35 |
| Removal losses | 716.03 |

| | |
|---|---:|
| Salaries installation foreman and assistant | 3,714.23 |
| Bad debts | 228.41 |
| Depreciation | 802.99 |
| Interest paid out | 2,572.27 |
| Total | $152,261.36 |

It does not appear definitely from the evidence whether the salaries voted the directors were in fact paid. These salaries amount all told to $46,200 for the year. No items of expense other than listed above are shown by the evidence, excepting plaintiff's compensation. If the salaries of the directors are properly included as an item of expense, there were no net profits on which to base commissions.

The finding of the court is that the Salt Lake division of defendant corporation made no net profit for the calendar year 1929, computed upon the basis of proper recognized bookkeeping practices, and after charging off the bad debts, depreciation, law suits, etc., this finding could be made only on the theory that the salaries of the directors should be deducted as an item of expense in determining whether there was a net profit.

The plaintiff in his amended complaint asks that the defendants be required to render an account of all the receipts and disbursements of the corporation, and after said accounting has been had that the plaintiff have judgment against the defendant for the amount ascertained to be due. The court found that the books and records were in no-wise complicated or involved so as to call for an accounting on the part of the defendant. The defendants came into court with their books of account. Mr. Murdock, the secretary and treasurer of the defendant corporation, was sworn in behalf of the plaintiff and testified to the items of expense incurred as shown by their books. No evidence was offered in behalf of the defendant and no information elicited from the secretary and treasurer by cross-examination or otherwise, excepting as hereinbefore indicated with reference to expenses incurred in the transaction of the business.

A prima facie case was made by plaintiff showing net profits upon which he was entitled to a commission, unless it can be said as a matter of law that the defendants as directors were entitled to create salaries payable to themselves in amounts sufficient to consume the net profits, after the contract of employment had been entered into. In construing the contract of employment the defendants place a great deal of stress upon the expression, "these net profits to be computed after proper recognized bookkeeping practices have been observed." This provision cannot in any way assist the court in determining what items may or may not be deducted in determining the net profits under the contract between these parties. Under the terms of the contract four items are specifically mentioned, and then follows the general word, "etc." The expression "etc." has frequently been held without meaning or effect because of its vagueness and uncertainty. In *State* v. *Wallichs,* 12 Neb. 407, 11 N. W. 860, the court says "etc." is equivalent to saying "and others," which is not a specific designation of anything, and an appropriation for certain described objects, etc., is not a specific appropriation. But if the expression be given the more liberal interpretation frequently used by the courts that it indicates other things of like character to those which have been made, it is difficult to see how it can be interpreted to include in this case salaries of officers that had not been voted or paid before the contract was entered into, when there was no mention either in the contract or in the conversation of the parties leading up to or concerning its execution that in any manner suggested such construction.

In construing the term "net profits" as used in the contract, it is the duty of the court to consider the language in connection with the conditions and circumstances under which the parties were contracting and the relation which they sustained to each other. 2 Elliot on contracts, 774.

Where the language is mixed and susceptible of more than

one construction, the court should attempt to place itself as nearly as possible in the situation of the parties to the contract at the time the agreement was entered into, so that it may view the circumstances as viewed by the parties themselves to be enabled to understand the language used in the sense with which the parties used it. In order to accomplish this purpose it is generally proper for the court to take notice of the surroundings and attendant circumstances and consider the language used in the light of such circumstances. Id., p. 791.

When this contract was entered into, the plaintiff had been in the employ of the defendant corporation for one year under a contract in all respects similar. During that year no salaries were paid the directors. When the contract was renewed for the year 1929, no mention was made of any intention to create a new type of expense in the form of salaries to be charged against the business in determining the net profits. It must have been in the mind of the plaintiff that net profits would be arrived at during the year 1929, in the same manner as they were arrived at in the preceding year. It would seem if the defendants at the time of renewing the contract for the year 1929, had contemplated creating these additional and new expenses, they would have so stated. Failure so to do forces the conclusion that either they had no such intention or that they deliberately failed to inform plaintiff thereof.

It is a familiar rule of construction that the language used must be construed most strongly against the person using it. In this case the contract is in the form of a letter written by the defendant corporation to the plaintiff in which they set out the terms of the employment. It is their language used at a time when no salaries were being paid and were apparently not in contemplation of being paid. At that time, under the conditions surrounding the plaintiff, he could not be expected to anticipate the creation of the new expenses which, if allowed, would make meaningless that part of the contract referring to net pro-

ceeds. The contract should be so construed as to require the payment of commissions due the plaintiff upon the net proceeds of the Salt Lake division without deducting salaries voted to the directors as managers after the contract had been entered into.

During the year 1929, the defendant company found it necessary to borrow money with which to carry on its business and to pay interest thereon. Interest so paid out was a necessary item of expense and would have to be deducted from the total income in order to arrive at the net profits.

The judgments in both cases should be reversed and the causes remanded to the district court of Salt Lake county with directions to grant new trials. Costs to appellants. Such is the order.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.