ALASKAN FUR CORPORATION, Respondent, v. FIRST NATIONAL BANK OF KALISPELL, Appellant.

(No. 7,330.)

(Submitted February 1, 1935. Decided February 26, 1935.)

[41 Pac. (2d) 1117.]

*Messrs. Foot, Aronson & Foot,* for Appellant, submitted a brief; *Mr. A. T. Aronson* argued the cause orally.

*Messrs. Logan & Child,* for Respondent, submitted a brief; *Mr. E. M. Child* argued the cause orally.

186

MR. CHIEF JUSTICE SANDS delivered the opinion of the court.

This is an action for the recovery of the sum of $1,000 and interest, claimed by plaintiff for the negligent delivery of a check for $1,000 issued by the plaintiff to the Flathead Fur Farm, and delivered to the defendant under the instructions of a letter, as follows:

"Kodiak, Alaska Aug. 20th 1929

"First National Bank Kalispell Montana

"Gentlemen: We herewith enclose our check for $1,000.00 drawn on the Dextor Horton National Bank of Seattle Wash

.

payable to The Flathead Fur Farm Kalispell Montana as a deposit on the purchase price of 500 pairs of Muskrats at $11.00 per pair crated F. O. B. Seattle Wash safe delivery to Seattle guaranteed and sex guaranteed. In the event that the Flathead Fur Farm accepts this order we will mail to the First National Bank of Kalispell Montana the balance $4,500.00 a total of $5,500.00 which the First National Bank of Kalispell Montana will deliver to the Flathead Fur Farm upon the surrender of the Express receipt for 500 pair of Muskrats prepaid to Seattle Wash

"Resp Yours

"ALASKAN FUR CORPORATION

"A. W. BENNETT President"

The question in issue is dependent upon the construction to be placed upon the letter. The court found in favor of the plaintiff, and rendered judgment for the full amount of the check and interest. Hence the appeal.

There was very little testimony in the case to give any light upon the proper construction to be placed upon the letter. If other communications passed between the parties, they are not in the record. The letter was construed by the bank to require the delivery of the check to the Flathead Fur Farm, and the bank obeyed that construction promptly by delivering the check and it was promptly cashed by the payee through another bank in the city of Kalispell.

The plaintiff alleged in paragraph 9 of the complaint that "on the 28th day of October, 1929, the plaintiff notified the defendant that the said Flathead Fur Farm had not fulfilled its contract and not to pay the $5,500 mentioned in Exhibit A under any conditions." (Exhibit A is the letter.) It is to be noted here that there is no allegation in the complaint, nor any testimony, to indicate that the additional $4,500 had been forwarded to the defendant, or who was at fault for failure to carry out the contract of sale.

The language used in the above letter, as viewed carefully, leaves some doubt in the mind of a reader as to just what was intended. We must construe it as an ordinary busi-

ness man would view it under the circumstances. It is a familiar rule of construction that language used must be construed most strongly against the person using it. (*Read* v. *Forced Underfiring Corp.*, 82 Utah, 529, 26 Pac. (2d) 325; *Clise Investment Co.* v. *Stone,* 168 Wash. 617, 13 Pac. (2d) 9.) Further citations are unnecessary on this point. The rule is applicable in this case, and both parties concede that such is the proper rule of interpretation.

If we consider the check as merely an escrow, what would be the purpose of sending it to the defendant? It was payable to the Fur Farm Company and could not be cashed without the indorsement of the payee. It was much like a postdated check. It could not be cashed without delivery and indorsement of the Fur Farm Company. It was subject to recall by the plaintiff at any time. The bank was merely the agent of the Alaskan Fur Company. The delivery of the check to the bank to be held until the express receipts were delivered would be of no effect whatever if either party chose to abandon the contract of sale, except to inform the Fur Farm Company of the name of the bank upon which the payment was to be made. Such information could very safely have been conveyed to the defendant by the Alaskan Company direct to the Fur Farm Company. On the other hand, if we regard the check as intended for immediate delivery and as a partial payment, it does have the effect of an earnest payment insuring the performance of the contract—that is to say, it is a down payment. The bank was justified in assuming that the plaintiff was not making an idle gesture.

Is it not more reasonable to construe the word "deposit" as meaning a deposit with the vendor, the Fur Farm Company, than a deposit with the bank? It certainly was not a deposit of money with the bank. It never did have in its hands any cash belonging to the plaintiff.

Counsel for respondent in its brief says: "Taking the nature of the transaction into consideration, the purpose is apparent. It is a guaranty of good faith. There would, then, be on deposit with the bank $1,000.00 as a protection to the Fur

Farm if, after acceptance of the order and tender of express receipts, the plaintiff had not sufficient money on hand to pay the balance; it would cover any expense the Fur Farm would have been put to in case the plaintiff was unable to perform. Is not that more reasonable than to assume that the plaintiff, with headquarters in Alaska, dealing with the Fur Farm at long arm's length, would pay the $1,000.00 without a single iota of assurance that the Fur Farm would make good? The $1,000.00 deposit made the Fur Farm people secure if they made good. There was nothing to assure ·plaintiff that the Fur Farm would make good, which it did not, or to protect plaintiff if the Fur Farm failed to deliver the muskrats. The logic of the situation—the common sense, business way of doing business is against defendant's contention.''

Where was the ''guaranty of good faith'' if the Fur Farm must first go to the expense of crating the muskrats and prepaying the express to Seattle before it could get a cent out of the transaction? What assurance did the Fur Farm Company have that the check, when finally delivered, would be honored at Seattle? The muskrats would probably travel as fast as the check, perhaps faster, and it might have been impossible to effect a ''stoppage in transit'' before the failure of the Seattle bank to honor the check became known to the Fur Farm Company. The latter company was entitled to protection in dealing ''at arm's length'' with the Alaskan Company. The transaction, if interpreted as respondent proposes, would have afforded the Fur Farm Company no protection. We venture the further query: Who would have suffered the loss if the defendant bank had held the check and the Seattle bank had failed in the meantime?

We think the only reasonable interpretation to be placed upon the letter is that the ''deposit'' was to be with the Flathead Fur Farm Company as a first payment, and the delivery of the $1,000 check by appellant was warranted by respondent's letter. Such interpretation is more in accordance with ordinary sale transactions.

Having reached this conclusion, the judgment must be reversed, but we see no reason for remanding the cause. The district court of Flathead county is directed to enter judgment of dismissal and assess the costs to plaintiff.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. JUSTICE MORRIS, being absent on account of illness on date of submission of the cause, takes no part in this decision.

Rehearing denied March 14, 1935.