[No. 23690. Department One. July 13, 1932.]

CLISE INVESTMENT COMPANY *et al., Appellants,* v. J. T. STONE *et al., Respondents.*[1]

*Bogle, Bogle & Gates,* for appellants.

*John F. Dore,* for respondents.

STEINERT, J.—This is an action in unlawful detainer brought by the plaintiffs to recover possession of certain premises used as an automobile parking space. At the close of the plaintiffs' case, both sides moved for a directed verdict. The court thereupon discharged the jury and, after argument, denied plaintiffs' motion, sustained defendants' motion, and thereafter entered its findings, conclusions and judgment. From this judgment, the plaintiffs have appealed.

[1]Reported in 13 P. (2d) 9.

On January 29, 1931, Clise Investment Company, a corporation, hereinafter referred to as appellant, leased the premises, for parking purposes only, to the respondent Stone for a period of five years. The lease contained the following provision:

"This lease may be cancelled by the lessor for the following reasons and in the following described manner: *In the event that the lessor elects to improve said property with a building or ground lease,* same for a period of 10 years or more, or sell said property, said lessor shall notify lessee in writing at least ninety days prior to the effective date of said cancellation of its intention to cancel and shall deliver to said lessee a receipt for payment of rent in full for said term of ninety days and lessee agrees to accept said notice of cancellation and vacate said premises at the expiration of aforementioned ninety day period."

We have italicized the portion of the provision which is to engage our attention.

Respondent Stone subsequently sublet the premises to respondent Gabbert, who continued and remained in possession thereof up to and including the time of the trial. On June 16, 1931, appellant advised Stone by letter that it had elected to execute a lease of the property for a period of ten years and thereby cancel the lease held by him. Following this notice, the appellant executed a lease of the premises to its co-appellant, Louis Diamond, for a period of ten years. With the exception of the length of the term, and a further detail to be later noted herein, the second lease was practically the same as the first. Neither of these leases required improvement of the premises by a building or otherwise. Demand for possession having been refused by Gabbert, this action was instituted.

The principal question in this case turns upon the construction of the words "ground lease" as contained in the foregoing cancellation clause. The ap-

pellant contended upon the trial, and now contends, that a "ground lease" is a contract for the possession and profits of a specified portion of the earth at its surface, as distinguished from the regions above. The respondents contended, and now contend, that such lease is merely the letting of land in contemplation of a building improvement to be made by lessee. The trial court sustained the respondents' view, holding that it meant the leasing of property for the purpose of erecting a building or other improvement thereon.

A search of the legal texts and decisions has not rewarded us with any definition of the term "ground lease," nor have counsel supplied us with any. They admit their inability to find any legal definition of that term. However, the nomenclature pertaining to leases affords us the term "ground rent," which is defined as the rent at which land is let for the purpose of improvement by building. 1 Tiffany, Landlord & Tenant, p. 1014; Byrnes' Law Dictionary, p. 760; Cyclopedic Law Dictionary, p. 422; *Russell v. City of New Haven*, 51 Conn. 259, 261. This definition convincingly argues that, by "ground lease," is meant a lease of ground in contemplation of a building improvement to be made thereon, and this, we think, is the interpretation commonly placed upon those words in their ordinary usage.

Referring to the lease itself, it seems to us that its language, considered in its context, connotes the idea of expected building improvement, and not merely the substitution of one lease for another upon practically the same conditions, with a mere modification in the length of the terms for which they are to run. Furthermore, the punctuation and phraseology of the language following the words "ground lease" in the cancellation clause above, indicate that the term "ground lease" was used as a noun and not as a verb, and that,

as such, it was set disjunctively in apposition to the preceding noun, "building," and is not correlated with the verb "to improve."

Of course, it could not be said that the mere leasing of ground is, of itself, an improvement of the premises, but to speak of improving property with a ground lease imports the idea of a lease in contemplation of a building improvement. To place the construction upon the language in the cancellation clause precisely as appellants contend that it should be, would require the insertion of the infinitive sign "to," or else the repetition of the words "elects to" before the words "ground lease," thus making "ground lease" a verb and not a noun.

In fact, appellant itself seems to have recognized the necessity of this precaution when it executed the lease to Diamond. We are now referring to the second detail of difference contained in the two leases. The Diamond lease provided that it might be cancelled in the event that the lessor elected to improve the property with a building covering at least seventy-five per cent of the ground, *or* elected to lease the lots for a period of twenty-five years or more. Thus, it was made plain that the condition of cancellation was in the alternative, either by improvement with a building, or else by giving a lease for an extended period of time.

If the appellant, in making the lease here under consideration, intended to preserve the same alternative right, it was too ambiguously expressed to be given effect, and contrary to what we believe is the reasonable construction to be placed upon the language used. When the language of a contract is susceptible of two constructions, one favorable and the other unfavorable to the party who has drafted or supplied the instrument, the court will not ordinarily construe it in such

a way as to place one of the parties at the mercy of the other, but will adopt that interpretation which is unfavorable to the one who so drafts or supplies it.

In passing, it may be noted that the appellant did not designate either of the leases above referred to as a "ground lease," although the premises demised were only a parking space. Therefore, as we think, when the words "ground lease" were used in the cancellation clause, some meaning must have been intended thereby other than would be indicated simply by the word "lease;" they must have had reference to an intended building improvement, for otherwise the word "ground" would have been redundant and meaningless.

The appellant further contends that, since the condition of cancellation was merely an *election* to lease and not the *making* of such lease, it therefore becomes immaterial what construction is placed upon the term "ground lease." The argument is plausible, but not convincing. When it is sought to terminate a lease according to its provisions, the landlord's motive may be inquired into. *Woods v. Postal Telegraph & Cable Co.*, 205 Ala. 236, 87 South. 681, 27 A. L. R. 834.

It would manifestly be unjust to give vitality to a landlord's *election* to lease when he had no intention or purpose to effectuate such election. The effect would be that the landlord would be permitted to insist upon a provision of his lease so long as it was profitable to him, or profitless to the lessee, and then repudiate it when it became profitless to the landlord, or profitable to the tenant. This would discourage industry on the part of the tenant, for by rendering the lease more valuable through his effort, he would thereby tempt the landlord to arbitrarily terminate it. Unless the provisions of the lease clearly permit this, the law should not strain itself to compel it.

As we have already stated, the second lease did not require any building improvement. Hence, in our opinion, it did not afford sufficient ground for cancelling the first lease.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HERMAN, JJ., concur.