[No. 34172.   Department Two.   January 9, 1958.]

HAROLD FISCHLER *et al., Appellants,* v. JACK E. NICKLIN *et al., Respondents.*[1]

[1]Reported in 319 P. (2d) 1098.

*Merrill Wallace*, for appellants.

*Joseph C. Murphy* and *Harry Hazel*, for respondents.

FOSTER, J.—This is an appeal from a judgment dismissing both appellants' first cause of action against the respondents for $7,855.41 upon a written contract, and the second cause of action for $600 paid by the appellants at the request of the respondents.

In August of 1953, respondent Jack Nicklin, by conditional sales contract, sold a tavern, or beer parlor, known as "The Hub," which he operated on leased premises in Toppenish, to Patricia H. Fulp, and subleased the premises to her.

Six months later, on February 3, 1954, when the balance due on the purchase price was $10,855, payable $250 monthly, respondent Jack Nicklin sold the conditional sales contract to appellant Harold Fischler for $8,000 cash, and assigned the lease to him. Nicklin promised repayment of the purchase price to appellants if the purchaser defaulted. Patricia Fulp defaulted, whereupon appellant Harold Fisch-

ler requested payment by the respondent Jack Nicklin, which he refused.

The second cause of action is to recover $600 paid by appellants to the lessor for accrued rent, claimed to have been paid at respondents' request.

Patricia Fulp met the accruing installments under the conditional sales contract and the sublease until June of 1955, when she defaulted. Subsequent to her default, she surrendered her beer license to the board for cancellation. The board declined to issue another to respondent Jack Nicklin.

No question arises as to the default, or of the appellants' demand for payment under the guaranty.

The trial court held that the refusal of the liquor board to renew the license for respondents rendered their operation of the tavern impossible, and their guaranty was conditioned upon their operation of the tavern. The language of the guaranty, so far as material, is:

" . . . and I agree that, if the assignee shall be required to take possession of the said property by reason of the failure of the vendee named in the said contract to comply with the terms of said contract, then, if the assignee shall so desire, I shall enter into possession of the said property and shall pay to the assignee the balance then remaining due upon the said contract at the rate provided in said contract, that is, $250.00 or more, per month, the first of such payments to be made by me to the assignee on or before the 1st day of the month next succeeding the month during which I shall enter into possession of the said property, and like payments of $250.00 or more to be made on or before the 1st day of each succeeding month thereafter until the balance due under said contract, including accrued interest on deferred payments at the rate of 6% per annum, shall have been fully paid. . . ."

The assignment of the lease provides:

"It is further agreed and understood that lessee, Jack E. Nicklin, has in addition to assigning the said Conditional Sales Contract herein described entered into between Jack E. Nicklin and Patricia H. Fulp, guaranteed payment of the balance of said Conditional Sales Contract to Harold Fischler and Maxine G. Fischler in accordance with the terms of

said Conditional Sales Contract and has further agreed in the event of default by the said Patricia H. Fulp to re-enter and retake possession of the tavern business operated at the above address if assignees so desire and in consideration of the said guarantee and agreement, re-enter the tavern business. . . ."

Based upon *Brunswick-Balke-Collender Co. v. Seattle Brewing & Malting Co.*, 98 Wash. 12, 167 Pac. 58, and *Stratford, Inc. v. Seattle Brewing & Malting Co.*, 94 Wash. 125, 162 Pac. 31,[2] respondents urge upon us the argument that the provisions in the guaranty, the lease, and the assignment thereof, restrict the use of the premises to tavern purposes, and that the guaranty was, therefore, conditional, and failed when the beer license was denied respondents. On the other hand, appellants, relying upon *Yesler Estate, Inc. v. Continental Distributing Co.*, 99 Wash. 480, 169 Pac. 967, and *Hayton v. Seattle Brewing & Malting Co.*, 66 Wash. 248, 119 Pac. 739, contend that the limitations referred to were only permissive, and the guaranty did not fail because the premises might be put to other uses.

In the view we take of the controversy, however, it is unnecessary to decide this question. It may be assumed, for present purposes, that a subsequent statute making the use of the premises for tavern purposes unlawful would invalidate the guaranty and the other instruments in question. 2 Restatement, Contracts, 852, § 458; 6 Williston on Contracts 5425, § 1938.

But that rule has no application to the circumstances of this case, for this is not an instance where a change in the statute makes the use of the premises for tavern purposes unlawful. That use is impossible because the liquor board refused to assign the existing license, or to issue a new one to the respondents. The statute is the same now as it was when the instruments in question were executed.

The controlling rule of law was stated by the su-

---

[2]For an analysis of the Washington cases, see Landlord and Tenant: Effect of Prohibition Laws upon Leases of Premises for Liquor Selling, 5 Cal. L. Rev. 423.

preme court of Montana in *Hein v. Fox*, 126 Mont. 514, 254 P. (2d) 1076, in these words:

"Then, too, where a party enters into a contract knowing that permission of government officers will be required during the course of performance, that such permission was not forthcoming when required does not constitute an excuse for nonperformance. See: 17 C. J. S., Contracts, § 463, page 953; *Standard Oil Co. of New York v. Central Dredging Co.*, 252 N. Y. 545, 170 N. E. 137."

■■ All parties had notice of the board's power to refuse an assignment of an existing license, or to refuse to issue a new one, because existing law is a part of every contract, and must be read into it, *Dopps v. Alderman*, 12 Wn. (2d) 268, 121 P. (2d) 388; *L. J. Dowell, Inc., v. United Pac. Casualty Ins. Co.*, 191 Wash. 666, 72 P. (2d) 296, and yet, respondents' attorney did not condition respondents' obligation to repay upon that contingency. Under such circumstances, the refusal of the state liquor control board to renew the beer license has nothing to do with the respondents' liability under respondent Jack Nicklin's agreement to repay the appellants the unpaid balance.

This view is sustained by the very recent decision of the supreme court of Florida in *Shore Inv. Co. v. Hotel Trinidad*, 158 Fla. 682, 29 So. (2d) 696:

"Knowledge of the situation was well known or could have been known by casual inquiry and the dominant rule seems to be that where performance of a contract becomes impossible after it is executed, or if knowledge of the facts making performance impossible were available to the promisor, he cannot invoke them as a defense to performance. The facts offered as a defense here were easily available to respondent. *Elwood et al v. Nutex Oil Co.* (Tex. Civ. App.) 148 S. W. (2) 862; *Otto v. Orange Screen Co.*, 57 Fed. Supp. 134; 17 C. J. S. 953; *John Soley & Sons, Inc. v. Jones*, 208 Mass. 561, 95 N. E. 94."

The Texas court of civil appeals recently held in *Embry v. Lewis*, 19 S. W. (2d) (Tex. Civ. App.) 87, 88:

"Where the impossibility arises after the contract is made and the defendant had knowledge of facts and circumstances from which it might reasonably have been foreseen, but makes no provision for such contingency, he assumes

the risk of the happening of the impossibility, and cannot defend on that ground."

See, also, *Wallace Studios v. Brochstein's, Inc.,* 297 S. W. (2d) (Tex. Civ. App.) 218.

■■ Nowhere in either instrument are there apt words limiting respondents' obligation to repay upon condition that the board issue respondents a liquor license. Courts cannot imply them. "Conditions precedent are not favored by the courts." *Superior Portland Cement, Inc., v. Pacific Coast Cement Co.,* 33 Wn. (2d) 169, 205 P. (2d) 597.

■ But if we were in doubt about the proper construction to be placed upon respondents' guaranty to repay the unpaid balance of the money they obtained from appellants, their guaranty would be construed against them because it was drawn by their own attorney. *Sunset Oil Co. v. Vertner,* 34 Wn. (2d) 268, 208 P. (2d) 906; *Foss v. Golden Rule Bakery,* 184 Wash. 265, 51 P. (2d) 405; *Fitzpatrick v. Bradshaw,* 171 Wash. 335, 17 P. (2d) 894; *Clise Inv. Co. v. Stone,* 168 Wash. 617, 13 P. (2d) 9; *Chermak v. P. J. Taggares, Inc.,* 166 Wash. 67, 6 P. (2d) 380; *Puget Sound International R. v. Everett,* 103 Wash. 495, 175 Pac. 40.

■ Nor does the premature surrender of the license by Patricia Fulp relieve the respondents of liability. The controlling rule of law is stated in 6 Williston on Contracts 5411, 5413, § 1932, as follows:

"One who makes a promise which cannot be performed without the consent or cooperation of a third person is not excused from liability because of inability to secure the required consent or cooperation, unless the terms or nature of the contract indicate that he does not assume this risk."

See, also, *Sparks v. Cater Electrical Constr. Co.,* 151 Neb. 675, 678, 39 N. W. (2d) 274, 275.

The agreement in question provides for attorney's fees in the event suit is brought by the appellants to enforce the contract. The judgment on the first cause of action is reversed and remanded with instructions to enter judgment in the appellants' favor for the amount due plus interest, and to allow appellants a reasonable attorney's fee.

Upon the second cause of action, appellant Harold Fischler testified that respondent Jack Nicklin asked him to pay the $600 to Mrs. Dewar to cure the default in his lease to her. This Nicklin denied. The trial court found that the appellants had failed to sustain the burden of proof.

The court had the right to believe the testimony of either party but chose to believe the respondents' denial. Even if we were of the view that the appellants' version was the correct one, since the abrogation by rule of the trial *de novo* requirement of factual disputes on appeals in nonjury cases contained in the appeal act of 1893, Laws of 1893, chapter 61, § 21, p. 130 (Rem. Rev. Stat., § 1736), Rule on Appeal 65, 34A Wn. (2d) (Supp. No. 7) 27, as adopted effective January 3, 1956, we are not authorized to substitute our judgment for that of the trial court. *Bremerton School Dist. 100-C v. Hibbard*, ante p. 226, 317 P. (2d) 517; *Croton Chemical Corp. v. Birkenwald, Inc.*, 50 Wn. (2d) 684, 314 P. (2d) 622.

The judgment is affirmed on the second cause of action but reversed on the first cause of action.

HILL, C. J., MALLERY, DONWORTH, and ROSELLINI, JJ., concur.