[No. 37792. Department Two. January 20, 1966.]

GEORGE MOOD et al., Appellants, WILLIAM BIERER et al., Plaintiffs, v. EDWARD BANCHERO et al., Respondents.*

*Reported in 410 P.2d 776.

*Malcolm J. Bell*, for appellants.

*Jerry T. Haggarty*, for respondents.

LANGENBACH, J.†—This is an action by landowners Mood, Brauner and Bierer to enjoin landowner Banchero and Jones Lake Drainage group from using a drainage ditch to lower the level of Jones Lake and to recover damages for its lowering. From a judgment of dismissal with prejudice, plaintiffs Mood and Brauner have appealed.

The properties of appellants are entirely within section 23, township 21 north, range 6 east, in King County, Washington. Their deeds describe their northern boundary as the

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

section line; no mention is made of Jones Lake. The north line of section 23 is the south line of section 14, in which a United States government survey in 1882[1] established that Jones Lake was entirely situated. The south boundary of Jones Lake was approximately 13.2 feet north of the south section line of section 14.

Jones Lake is a private, nonnavigable lake of approximately 21 acres in size. The natural outlet of the lake is in the northwest corner on the land of respondent Banchero. Through natural clogging of this outlet, the level of the lake gradually rose until, in 1925, predecessors in interest of appellants utilized Jones Lake as if they were riparian owners; they swam, boated, fished and hunted on it. Appellant Mood has a dock 30 feet long and appellant Brauner has a dock 50 feet long; this dock, however, does not reach the property line of respondent Banchero. When appellant Brauner purchased his land in 1954, not only was there this 50-foot long dock, but also a boat house and six cabins which apparently served as a tourist area; but he has not conducted a tourist business there.

The appellants continued to use Jones Lake in this manner until 1958, when respondents, as a group (respondent Banchero is the only one who owns land contiguous to the lake) constructed a drainage ditch to rectify the clogged condition of the natural outlet. They petitioned the Soil Conservation Service of the United States Department of Agriculture for assistance; and the Service paid one half of the cost of the drainage ditch. The level of the lake was lowered about 5 feet. The shoreline in front of appellants' properties receded from 40 to 60 feet, leaving their docks imbedded in mud. Alders and small brush grew along the muddy shorelands.

Palmer Coke & Coal Co. (not a party to this action and hereinafter referred to as Palmer Coal) owns approximately

---

[1]The only expert witness in the case interpreted these notes to mean that Jones Lake was entirely within section 14. However, appellants' counsel did elicit from him that the notes did not conclusively establish Jones Lake entirely within section 14.

a 25-foot strip of land with the south line of section 14 as its southern boundary. This land lies between appellant Mood's land and part of appellant Brauner's land and the present lake level, and has been substantially, if not completely submerged by Jones Lake from 1925 to 1958.

Appellants argued (A) that the evidence did not substantially support the trial court's findings that (1) Palmer Coal owned the strip of land between their land and the lake as of 1882, (2) the natural outlet was presumably clogged by beaver dams, and appellants' deeds do not contemplate waterfront property, and (3) the government survey of 1882 established Jones Lake as being entirely in section 14, and the natural boundary of the lake did not cross or touch the south section line of section 14; and (B) that since they had bordered upon the lake, they have riparian rights, or had acquired such rights by prescription or adverse possession.

■ Where the trial court can reasonably interpret facts in favor of either party, this court is not authorized to substitute its judgment for that of the trial court. *Fischler v. Nicklin*, 51 Wn.2d 518, 319 P.2d 1098 (1958). This court will reverse the findings of the trial court only where the evidence does not substantiate those findings. *Stringfellow v. Stringfellow*, 56 Wn.2d 957, 350 P.2d 1003, 353 P.2d 671 (1960).

■ Appellants argued that the evidence did not support the finding that Palmer Coal owns the land between their property and Jones Lake as of 1882; they asserted that the evidence on which the trial court relied was improperly admitted. Appellants objected to the admission of the deed showing Palmer Coal as grantee to the land between them and the lake on the ground that it was immaterial. On the contrary, the ownership of this land (as will be noted herein) is most important. Appellants also objected to respondent Banchero's testimony as to Palmer Coal ownership on the ground that no foundation was laid to show his knowledge concerning who owned this land. Banchero, however, testified that he once tried to buy the land in question from Palmer Coal.

■ In addition, appellants argued that the evidence did not substantiate the findings that the natural outlet of the lake was presumably clogged by beaver dams and that appellants' deeds did not contemplate waterfront property. As to the former finding, it is sufficient to state that the outlet clogged by natural means, whether or not by beaver dams is not material nor prejudicial to appellants. As to the latter finding, appellants' deeds nowhere mention water as a boundary; their northern boundary is the section line between sections 23 and 14. This does not mean, in fact, that their land did not border on the natural level of Jones Lake with corresponding riparian rights. The deeds must be considered with all the surrounding circumstances to determine whether riparian rights existed.

Next, appellants argued that the government survey notes of 1882 can be reasonably interpreted to mean that Jones Lake did in fact cross the south section line of section 14. The *Fischler* case, *supra,* however, precludes this court from interpreting these notes unless the finding of the trial court cannot be reasonably substantiated. Respondents' expert witness testified that these notes established Jones Lake entirely within section 14. Appellants did not produce any evidence to the contrary; they simply elicited from this witness that these notes were not conclusive. The trial court made a reasonable determination for which this court cannot substitute its judgment.

Notwithstanding that these notes established Jones Lake entirely within section 14, appellants argued that the natural boundary of the lake gradually shifted due to the natural clogging of an outlet until, in 1925, it crossed or touched the south line of section 14, and they thereby acquired riparian rights.

■ As appellants contended, the general rule is that the boundary line correspondingly shifts with the gradual change in the waterline. While government meander line surveys may be considered as evidence of the actual high waterlines, as they existed at that time, they are not conclusive as to the actual waterline as it existed then or later. *Ghione v. State,* 26 Wn.2d 635, 175 P.2d 955 (1946). This

rule, however, concerns the establishing of a boundary of one's own land; it has no application here. Moreover, no one disputed the boundary of appellants' lands. The deeds of appellants described their boundary as the north line of section 23.

■ Appellants apparently had in mind that the boundary of Jones Lake had so naturally changed as to make applicable the general rule that riparian rights arise from ownership of the shore on which the nonnavigable lake naturally bounds, regardless of the ownership of the bed of the lake, and these rights are protected by Const. art. 1, § 16. *In re Clinton Water Dist.*, 36 Wn.2d 284, 218 P.2d 309 (1950). See *Johnson v. Seifert*, 257 Minn. 159, 100 N.W.2d 689 (1960).

Through the natural clogging of the outlet of Jones Lake, the lake level did rise to such a level that appellants and their predecessors in interest made use of the lake as if they were riparian owners. They swam, boated, fished and hunted on it. They also built docks which, prior to 1958, extended into the lake. These uses, along with the natural level of the lake, are not only appellants' basis for establishing riparian rights by bordering on a nonnavigable lake, but also, in the alternative, to establish such rights by adverse possession. In order to establish such riparian rights, however, the property rights of Palmer Coal must be considered and litigated.

The land now owned by Palmer Coal abutted the natural level of Jones Lake in 1882. Since it abutted the lake, certain riparian rights were acquired. One of these was the right to have the waters of the lake removed from its land by unclogging the outlet of the lake and thereby lowering the lake level to its natural level prior to the submergence of its land. *DeRuwe v. Morrison*, 28 Wn.2d 797, 184 P.2d 273 (1947). *Cf., Drainage Dist. No. 2 of Snohomish Cy. v. Everett*, 171 Wash. 471, 18 P.2d 53, 88 A.L.R. 123 (1947). For this court to decide that appellants have a right to maintain the level of Jones Lake at its natural level since 1925, the court, of necessity, would have to declare that Palmer Coal had no right to maintain the level of the lake

at its natural level prior to the submergence of its land. Since Palmer Coal is not a party to this litigation, its rights cannot be adjudicated herein. Hence, appellants have failed to establish riparian rights under either theory of owning the shore which abuts the natural level of the lake or of acquiring such rights by adverse possession.

▮▮ Appellants, however, argued that they had acquired certain prescriptive rights in the use of the lake as against respondent Banchero (who owned all of the land on Jones Lake except that hereinbefore discussed) without relying on any rights derived through Palmer Coal. Since prescriptive rights work corresponding losses or forfeitures of the rights of others, they are not favored in the law. To establish prescriptive rights, appellants must have proved that their uses had been open, notorious, continuous, uninterrupted and adverse to the respondent Banchero and with his knowledge of such. The fact of possession or use alone, however, raises a presumption that such use was with the consent of the respondents or the true owners. *Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn.2d 75, 123 P.2d 771 (1942); *Malnati v. Ramstead,* 50 Wn.2d 105, 309 P.2d 754 (1957); *Anderson v. Secret Harbor Farms,* 47 Wn.2d 490, 288 P.2d 252 (1955).

Appellants boated, swam, fished and hunted and had docks on the lake. The docks do not appear to have been on the lands of respondent Banchero. On the contrary, they appeared in the record to have been both on appellants' and Palmer Coal land. Mood's dock extended 30 feet into the lake water; Brauner's dock extended out 50 feet, but not onto Banchero's land. The use of these docks and other uses along the shoreline prior to 1958, if adverse to anyone, was probably adverse to Palmer Coal, which was not a party to this action.

The activities of swimming, boating, fishing and hunting were presumed to have been with the consent of the person who had the right to exclude appellants from such enjoyment. *Northwest Cities Gas Co. v. Western Fuel Co., supra.* Appellants have not offered any evidence to prove otherwise; they have failed to sustain their burden of proof.

The findings and judgment of the trial court are amply supported by the evidence.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.