[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Like the carpenter's hammer, ability to reason both inductively and deductively, is a basic tool in the lawyer's daily work. American legal education, despite its many shortcomings, has placed great emphasis on sharpening and honing these reasoning skills. The whet-stone used by many a professor and bar examiner to bring the blade of reason to a keen edge has of ten been an ability to throw one or two errant abrasive details into the otherwise plain fact pattern of their quest ions, so that application of the rules of law becomes a laborious and less certain exercise of the most remote synapses of the brain. In deeding a farmhouse to his daughter Virginia, the late F. Francis D'Addario stamped himself the equal of the most ingenious of these examiners. His deed prompts her action to quiet title to premises known as 75 Williams Street, Trumbull brought under provisions of section 47-31 of the General Statutes. Defendants are his executors and serve also as trustees of the testamentary trusts created under his will. The question as to title arises because of the way in which the deed came to be drawn, its content, time of recordation and other circumstances surrounding the transaction.
 I.
The court will first turn to separate counts claiming damage for failure to repair (2nd count), waste (3rd count), and unjust enrichment by wrongful leasing and taking of the rents and prof its therefrom (4th count). Because the court finds no credible evidence exists showing whether waste of the premises or damage from failure to repair the improvements occurred while the defendants exercised dominion or control of the premises or at some earlier time for which they could not be held responsible, the court will not further discuss the waste or failure to repair counts. It has not been proven that any waste or damage was caused by them or the decedent they represent or succeed. Accordingly the court finds for the defendants on count 2 and 3. Additionally the plaintiff claims unjust enrichment of the defendants by wrongful leasing. Under Connecticut law a right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation, it is contrary to equity and good conscience for one to retain a benefit which has come at the expense of another. Providence Electric Company v. Sutton Place, Inc.,161 Conn. 242, 246. To establish a claim for unjust enrichment a plaintiff must prove two elements: It must be shown (1) that a CT Page 3617 defendant was benefited, i.e., that he received something of value, and (2) it must be shown that the benefit was unjust in that there was no recompense by the defendant to the detriment of the plaintiff. There is simply no evidence of how much, if anything, was received by the defendants for rental payments and how much was spent by the defendants carrying, maintaining and making numerous repairs to the property. Therefore, the court does not find the unjust enrichment pled was proved. Accordingly the court finds for the defendants on the 4th count.
 II.
The court will now turn to the remaining claim of the plaintiff: that Virginia D'Addario has title to the premises by virtue of the deed from her father.
The deed from her father, F. Francis D'Addario was unusual in two respects.
First, it purported to quit claim away all of F. Francis D'Addario's interest but then indicated the grant was conditional by providing that the "Releasor grants all of the above described real property to Releasee for so long as and upon the condition that Releasee shall use the premises as her principal place of residence."
Secondly, it provided for a subsequent defeasance by use of this language: "In the event that Releasee does not use or ceases to use the above described real property as her principal place of residence, the above described property shall automatically revert to Releasor and his heirs and assigns upon the recording by Releasor of the Affidavit attached hereto as Schedule B and it shall not be necessary for releasor or his heirs or assigns to take any further action to effectuate the reverter."
This deed also incorporated as Schedule B a form to terminate any such interest by recording it on the land records, which used the following language:
 "The undersigned being duly sworn, hereby deposes and says as follows:
 1. That he is the Releasor under a certain Quit Claim Deed to Virginia D'Addario as the Releasee, dated December 31, 1982 and recorded in volume at Page of the Land Records of the Town of Trumbull. CT Page 3618
 2. That under such Quit Claim Deed Releasor granted certain real property described therein to Releasee for so long as and upon the condition that Releasee should use the premises as her principal place of residence and, furthermore, that if Releasee did not use or ceased to use the real property as her principal place of residence, said real property would automatically revert to Releasor and his heirs and assigns upon the filing of this Affidavit in the Land Records of the Town of Trumbull.
 3. That to the best of the undersigned's belief and knowledge, said Releasee has ceased to use such real property as her principal place of residence as of and this Affidavit is being recorded to effectuate the automatic reverter of the real property to the undersigned.
 F. FRANCIS D'ADDARIO Sworn to and subscribed to before me this ___ day of ___ 19 ___."
The court further finds the following facts:
F. Francis D'Addario was a Bridgeport businessman with extensive real estate holdings.
Some time in December of 1982 he executed the quit claim deed to his daughter Virginia, which bore no day of the month either within the body of the deed or its acknowledgement. The deed was recorded on February 3, 1983 in Volume 477 at Page 120 of the Trumbull Land Records. At some time prior to making this deed, Mr. D'Addario envisioned establishment of a family compound around his Trumbull home where his children and their families might live. Discussions ensued with his daughter Virginia about her taking occupancy of an old farmhouse across the street. Simultaneously Mr. D'Addario engaged a lawyer, Peter Penczer, to determine whether the land, on part of which the farmhouse rested at 75 Williams Street could be divided into two or three parcels without resort to municipal zoning boards. D'Addario signed the deed sometime in December.
Virginia D'Addario has never occupied the premises known as 75 Williams Street, Trumbull, at any time. CT Page 3619
After these initial discussions with her father, Virginia D'Addario determined that renovations and repairs to the structure which her occupancy would require would run between $200,000.00 and $300,000.00. She indicated to her father if she made that kind of investment, she would want the premises in her name. He did not agree to this in the discussion between them.
Although she personally articulated her position using blunter and more spirited terms of expression, it would be fair to say that she later advised her father that she would not accept his offer, if he would not deed it to her. She never commenced the repairs.
Nonetheless, despite that conversation which occurred in January of 1983, the deed was recorded on February 3, 1983 by Attorney Penczer without further conversations with F. Francis D'Addario, after Attorney Penczer had determined that only two lots could be made from the premises. Virginia did not learn of her father's deed to her until after his death.
F. Francis D'Addario told his daughter that this "property won't be yours until I die." She understood this to mean that her father wanted to control who owned the property.
Mr. D'Addario lived across the street from the premises which is subject of this case and therefore had reason to know who occupied it, and that Virginia had never taken occupancy. Furthermore John W. Rabel who was engaged to manage all of the D'Addario properties, was told by Mr. D'Addario that the deal was "off" with his daughter and that he should lease out the premises which Rabel did prior to Mr. D'Addario's death and then after his death for the executors. Mr. D'Addario knew his daughter lived in Stratford at the time of the initial discussions about her moving into 75 Williams Street and he later helped to select another home which she and her husband bought in Fairfield. He was a guest in daughter Virginia's Fairfield home many times after that. These facts cause the court to infer that he knew his daughter never lived in the premises at issue in this lawsuit.
Virginia D'Addario did not know that her father had executed a deed to her or that it was recorded until after his death.
F. Francis D'Addario, despite wide ranging business interests, kept a "hands on" approach to his business affairs. He opened all of his own mail.
After F. Francis' deed to Virginia was recorded, local CT Page 3620 Trumbull Real Estate Tax Bills and Sewer Use Tax Bills were rendered in the name of Virginia D'Addario. Subsequent to F. Francis D'Addario's death, Virginia learned of her name appearing on Trumbull tax bills because someone from her father's company, D'Addario Industries, forwarded them to her. All sewer and real property tax bills were addressed to the 513 Boston Avenue, Bridgeport address occupied by the D'Addario headquarters. She paid numerous real estate and sewer tax bills on the premises from the time of his death until the ownership controversy accelerated. She did not pay the Sewer Use Tax Bill due January 1, 1990 or the most recent Real Estate Tax Bill, the last quarterly payment of which is due April 1991.
The court infers that F. Francis D'Addario because of his "hands on" approach to his business probably knew title was in his daughter's name on the land records by virtue of the fact that tax bills in her name were sent to D'Addario Industries, his place of business, they listed the address of 75 Williams Street, and were issued in the name of Virginia D'Addario and D'Addario paid the taxes. From these facts and the fact that he never filed an Affidavit on the Land Records terminating her interest prior to his death, and the other evidence in the case, the court infers that he knew the Land Records showed title in her name and knew she did not live in the house but chose not to terminate her interest.
In their capacity as trustees the defendants executed and recorded an affidavit on October 4, 1988 in Volume 671, at Page 72 of the Trumbull Land Records. The affidavit conformed generally to the form attached as Schedule B to Mr. D'Addario's deed and was for the purpose of effectuating the automatic reverter to them as the trustees and devisees of F. Francis D'Addario.
 III.
Resolution of where this title lies inevitably involves a determination of what kind of estate was created in Virginia D'Addario, and whether an estate still remains vested in her. That determination will necessitate interpretation of the deed in light of the circumstances surrounding its making, and a finding whether delivery and acceptance of it occurred.
The court finds that the deed was a gift of the fee simple subject to a power of termination for condition broken: that the power of termination was personal to the grantor F. Francis D'Addario and expired at his death and that the lifelong election by the grantor not to exercise the power of termination despite the breaching of the condition subsequent by the grantee converted the fee simple defeasible conveyed by the deed to a CT Page 3621 fee simple absolute in the grantee Virginia D'Addario upon her father's death.
The source of the controversy in this case is the effect of the paragraph on the second page of the deed which is interpreted in diametrically different ways by the grantee and the executors of the estate, including two of the grantee's brothers. These interpretations grow out of the language of the paragraph, viewed in light of the conduct of the grantor and grantee subsequent to the deed's execution. The executors and trustees assert that the deed was ineffective for various reasons and the title to the property is in the trustees who by will take the residuary estate of the father. The plaintiff argues that the deed was effective and the fee is now properly in her.
The defendants argue that the interest conveyed created a springing executory interest in Virginia and resulted in the fee interest remaining with the grantor F. Francis D'Addario unless and until the executory interest came into being. See Cunningham, Stoebuck Whitman, The Law of Property Hornbook series, Lawyer's Edition, West Publishing Co., 1984; Future Estates Future Interests 3.12, p. 120.
Alternatively, the defendants urge that in the event the court finds that the estate conveyed was not an executory interest, that the deed contains a grant subject to a condition subsequent that she failed to meet resulting in a reversion of the property to the grantor.
In the paragraph which has made these divergent interpretations possible Mr. D'Addario is designated as "Releasor".
The language grants all of the real property to Virginia "for so long as and upon the condition that" she "shall use the premises as her principal place of residence." It then provides that if she does not use or ceases to use the real property as her principal place of residence, it shall automatically revert to F. Francis D'Addario and his heirs and assigns upon the recording by him of the Affidavit set out in Schedule B. It further set out that it shall not be necessary for Releasor or his heirs and assigns to take any further action to effectuate the reverter.
At no time prior to the execution and recordation of the deed had the grantee ever resided at the subject premises, nor has she at any time since. At no time did the grantor F. Francis D'Addario record the Affidavit above mentioned either. CT Page 3622
 IV.
The court will first turn to the question whether there was an effective delivery and acceptance of the deed. A conveyance by deed is ineffective absent delivery and acceptance. Wiley v. London Lancashire Fire Ins. Co.,89 Conn. 35, 39 (1914). However, a wide range of behaviors and circumstances have been found sufficient to create a constructive delivery, and courts have been willing to presume acceptance in a variety of factual situations. "The primary rule of construction is that the real intention of the parties, particularly that of the grantor, is to be sought and carried out whenever possible," 23 Am Jur 2d Deeds, 221, p. 227. Connecticut's Supreme Court has expressed the manner of construction in this way:
 Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties . . . [I]n arriving at the intent expressed. . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence.
Dennen v. Searle; 149 Conn. 126, 131 (1961) (citing Bartholomew v. Muzzy, 61 Conn. 387, 393 (1892); Luce v. Niantic Menhaden Oil Guano Co., 86 Conn. 147, 149 (1912); B.T. Harris Corp. v. Bulova, 135 Conn. 356, 360 (1948).
This rule was phrased this way by the Appellate Court in Russo v. Stepp, 2 Conn. App. 4, 6 (1984): "The language employed is not the only criterion. The language used therefore must be construed with reference to the situation of the property and the surrounding circumstances in order to ascertain the intentions of the parties."
It has been held, in keeping with such principles, that where a grantor records a deed with intent to vest title in the grantor, there is a legal delivery. Wiley v. London 
Lancashire Fire Ins., Co., 89 Conn. at 40 (1914).
The intent of the grantor is in all cases the most important factor: "The placing of a deed on record, with the CT Page 3623 intent that it should pass the title to the grantee, constitutes a valid delivery, though the grantor retained the deed in his possession, and it was never actually delivered." Moore v. Giles, 49 Conn. 570, 573 (1882). In that case, acceptance by the grantee was presumed: "[T]he law presumes [the grantee's] assent whenever the deed is beneficial to him, although his dissent may be proven." Id. Rebuttal of such presumption is the task faced by the defendants here. Where a deed has been recorded, the burden is on the party claiming nondelivery to demonstrate such by clear and convincing evidence. Lomartira v. Lomartira, 159 Conn. 558, 562 (1970). In Humiston v. Preston,66 Conn. 579, 582-84 (1895), the court implies that a recordation of a deed by a grantor with intent to convey would be effective to shift title to a grantee even where the grantee did not learn of the conveyance until after the grantor's death. In that case the trial court had found no such intent, but the Supreme Court clearly stated that delivery "depends entirely on the intent with which the act [of recording] is done by the maker." Id. at 584.
Numerous other jurisdictions have supported the rule that the grantor's intent virtually obviates the other factors in determining whether there has been a legal delivery.
New York:
 Delivery is complete when a grantor unconditionally hands over the executed deed to a third person even if that third person is the grantor's attorney and the grantee is unaware of the delivery . . . Acceptance will be presumed if the conveyance is beneficial to the grantee. . .
Williams v. Ellerbe, 62 Misc.2d 827, 310 N.Y.S.2d 60, 62
(1969).
Missouri:
 While delivery is essential to the validity of a deed, it is not necessary that there be a manual delivery and if a deed is signed, acknowledged, and placed in the custody of a third person for the benefit of the grantee, then the deed has been delivered and title passes, if that is the grantor's intent.
Hafford v. Smith, 369 S.W.2d 290, 295 (Mo. 1963). CT Page 3624
Illinois:
 The execution and recording of a deed by a grantor shows prima facie an intention on his part that such a deed become legally operative. In most cases there would be no object in having the deed filed for record if it were not intended that it should operate to pass title.
Maciaszek v. Maciaszek, 21 Ill.2d 542, 173 N.E.2d 476, 478
(1960).
Delivery was made here. The deed was recorded despite the fact that the grantee Virginia D'Addario never agreed to accept the deed on the condition that she move into the premises.
The court finds that although Mr. F. Francis D'Addario signed his deed sometime in December of 1982, he never told his lawyer who had executed it, not to record it at any time prior to its recordation, nor is there any evidence that he did so at any later time, either.
In light of the facts found, and based on the authority, a prima facie case for delivery has been made. The determination for the court is whether any "clear and convincing evidence" negating delivery has been produced. Lomartira, supra. The grantee never agreed to accept the deed on the condition originally stated: that she move into the property prior to the transfer.
It is true that the grantor maintained certain indicia of control and possession of the premises. The retention of control by the grantor, given the language of the deed, does not suffice to negate the presumption of delivery and acceptance: "It has been held that where a grantor continues to live on land previously conveyed, and exerts dominion and control by payment of taxes and the like, such acts create but a slight inference against the presumption [of delivery] . . . The presumption is even stronger in cases of voluntary settlement than in ordinary transfers . . ." McGhee v. Forrester, 15 Ill.2d 162,154 N.E.2d 230, 233 (1958) (citations omitted). See also Porter v. Woodhouse, 59 Conn. 568, 569 (1890) ("It is not even necessary that the deeds should be actually delivered to the grantees or anyone for them.")
In Adler v. Arker, 251 Iowa 915, 103 N.W.2d 761, 763 (1960), it was found that the continued possession and control of the CT Page 3625 subject realty by the grantor was sufficient to rebut the presumption of delivery. In that case, however, there was no condition attached or power of termination, as here, which would serve to harmonize the grantor's continued control with the presumption of delivery. The intent of the grantor was to reserve the power of termination to himself for life. His continued control does not serve to negate the presumption of delivery as it did in Adler. As to the apparent rejection by the grantee of the initial proposal, this can not fairly be construed a rejection of the deed actually made, since the deed in its ultimate form (including its legal effect after the grantor's death, if he be found to have intended his power to terminate to expire with him) is quite different from the terms so strongly rejected by the grantee at the onset. It has been held that, where a grantee learns of a deed of gift and does not reject it (prior to an attempted revocation), this constitutes acceptance. See Marshall v. Marshall, 140 Cal.2d 475, 295 P.2d 131,133 (1956). In the present case, the grantee's action prior to the attempted revocation by the executors, in paying the tax bills and in bringing this action, are all highly supportive of acceptance.
Further, one jurisdiction (Oregon) which, like Connecticut, indulges the presumption of acceptance where the deed is beneficial, has held that acceptance was completely unnecessary to vest title in the grantee:
 The defendant contends that the deed from Rickford was not effective to pass title to the plaintiff because he did not accept it during the lifetime of T. H. Halleck. There are statements in our cases to the effect that acceptance by the grantee is necessary to vest title in him. E.g., Lancaster v. May, 1952, 194 Or. 647, 243 P.2d 268, noted 32 Ore. L. Rev. 262 (1953). This conclusion has been reached on the ground that a deed is a contract and that acceptance is necessary to the formation of a contract. Tyler v. Cate, 1896, 29 Or. 515, 521 45 P. 800. But this is erroneous because title may be passed to a grantee who because of nonage or insanity is incapable of acceptance. It is more accurate to regard the conveyance of title as a unilateral rather than a bilateral transaction. Its unilateral character is uniformly recognized in conveyances by will. There is no reason CT Page 3626 to treat an inter vivos conveyance any differently for this purpose. The English courts do not. Thompson v. Leach, 2 Ventris 198 (1691), Mallot v. Wilson, 91903) 2 Ch. 394. Our cases have achieved substantially the same result by holding that acceptance is supplied through a presumption that a conveyance beneficial to the grantee is accepted . . .
 The same result can be arrived at directly by eliminating the requirement of acceptance in stating the operative facts necessary to transfer title. If it should occur that the vesting of title in the grantee is not beneficial to him or for some reason he does not wish to retain it, he may disclaim and revest the title in the grantor. American Law of Property 12.70; Tiffany, Real Property (3d Ed.) 1055-61; Garfield v. White, 1950, 326 Mass. 20, 93 N.E.2d 575. See also, Simonton, Transferring Title to land by deed, 36 W. Va. L. Rev. 343, 346-349 (1930). This appeals to us as the sounder approach and we hereby adopt it. Therefore, acceptance was not necessary to vest title in the plaintiff.
Halleck v. Halleck, 216 Or. 23, 337 P.2d 330, 336 (1959).
Furthermore, if the grantee didn't want the property, this action wouldn't have been brought.
The court finds delivery occurred here.
 V.
The court will now turn to a discussion of what interest the grantor intended to convey when he executed and recorded the deed, and whether the grantees residency was a condition precedent or condition subsequent.
"It is a well established principle of construction that wherever possible each part of the scrivener's phraseology should be given some import." Peckheiser v. Tarone, 186 Conn. 53,59 (1982) (citing Weil v. Beresth, 154 Conn. 12, 19 (1966); A.M. Larson Co. v. Lawlor Ins. Agency, Inc., 153 Conn. 618,621-22 (1966); Eastern Bridge Structural Co. v. Curtis Building Co., 89 Conn. 571, 575-76 (1915)). Connecticut courts CT Page 3627 have been inclined to construe ambiguous deeds in favor of the grantee and strongly against the grantor. See, e.g., Sweeney v. Landers, Frary Clark, 80 Conn. 575, 579 (1908).
Of the two interpretations possible regarding the key paragraph in the deed, the better interpretation would be that which harmonizes with the other language in the deed and does not contradict the credible evidence as the surrounding circumstances and behavior of the parties. See, e.g. 23 Am.Jur.2d 227, pp. 230-31:
 It is the duty of the court to reconcile and harmonize the terms of the instrument, if that may reasonably be done, to avoid a repugnancy in its provisions or terms. Every word, sentence and provision, if possible, is to have effect, and a construction which requires rejection of an entire clause is not be admitted . . .
The deed provision under discussion reads as follows:
 Releasor grants all of the above described real property to Releasee for so long as and upon the condition that Releasee shall use the premises as her principal place of residence. In the event that Releasee does not use or ceases to use the above described real property as her principal place of residence, the above described property shall automatically revert to Releasor and his heirs and assigns upon the recording by Releasor of the Affidavit attached hereto as Schedule B and it shall not be necessary for Releasor or his heirs and assigns to take any further action to effectuate the reverter.
This language either creates a condition precedent, under which the grantee received an executory interest in the property, or it creates a condition subsequent, vesting title in the grantee immediately, subject to termination for condition broken. See, e.g., Restatement of Property, 24 and 155; Warner v. Bennett, 31 Conn. 468, 475-77 (1863).
The court does not favor construction of the condition as one precedent to the vesting of title because: (1) the second sentence of the key paragraph becomes nonsensical if the title CT Page 3628 did not vest until the grantee moved in; the defeasance by filing the affidavit would not be required in such a case. Even if the second sentence setting forth the reverter requirement should be viewed as only intended to apply if the grantee moved in and later ceased to live there, the words "does not use" become illogical. If she could only take title by moving in, no act by the grantor would be necessary to terminate her interest in that situation;, (2) the language of the premises and habendum clause of the deed do not support the condition precedent. The language of these clauses on the first page of the deed is supportive of the interpretation that what was conveyed was the fee, rather than an executory interest. The premises include the term "all the right, title, interest, claim and demand whatsoever," (hardly language of limitation), and the habendum clause reads in pertinent part: "neither the releasor nor the Releasor's heirs, successors and assigns nor any other person claiming under or through the Releasor shall hereafter have any claim, right or title in or to the premises or any part thereof . . ." Black's Law Dictionary (5th Ed.) defines "habendum clause" thus: "The office of the `habendum is properly to determine what estate or interest is granted by the deed, though office may be performed by the premises, in which case the habendum may lessen, enlarge, explain or qualify, but not totally contradict or be repugnant to, estate granted in the premises." Both clauses in this deed are repugnant to the condition precedent interpretation. "Conditions precedent are not favored and the courts will not construe stipulations as conditions precedent unless required to do so by plain, unambiguous language." U.S. v. Schaeffer, 319 F.2d 907, 911
(9th cir. 1963) (citing 5 Williston on Contracts, 665, 17A C.J.S. Contracts 338, p. 322, Superior Portland Cement v. Pacific Coast Cement Co., 3.3 Wash.2d 169, 205 P.2d 596, 616
(1949); Fischler v. Nicklin, 51 Wash.2d 518, 319 P.2d 1098,1101; Kashishke v. Baker, 146 F.2d 113, 115 (10th Cir. 1944)); (3) the evidence that the grantor had stated the intent that grantee have the premises at this death is inconsistent with the condition precedent; construing the condition as one subsequent, the nonfulfillment of which gave him a power of termination, is consonant with such intention, particularly in the apparent absence of a specific testamentary provision. Finally, it must be noted that the affidavit which was created to terminate the Releasee's title reads in pertinent part: ". . . Releasor granted real property . . ." (Emphasis added).
The deed was one with a condition subsequent, reserving a power of termination in the grantor for condition broken. Such an interpretation gives effect to all the words of the deed, and requires a conclusion that the fee vested in the grantee at the time the deed was recorded. See e.g., Rand v. Rand,132 F. Supp. at 932. "If the estate is subject to a condition subsequent, CT Page 3629 then the holder of a power of termination has, after the occurrence of the terminating event, the power to terminate the estate, but until that power is exercised the present estate continues." Dunham, "Reverter and Termination," 20 Chi. L. Rev. 215, 218 (1952).
 VI.
The court will now turn to the question whether the grantor's power of termination was personal to him, or descended to his heirs, Executors or Trustees.
The relevant sentence of the deed provision reads in pertinent part:
 In the event that Releasee does not use or ceases to use the above described real property as her principal place of residence, the above described property shall automatically revert to Releasor and his heirs and assigns upon the recording by Releasor of the Affidavit attached hereto as Schedule B and it shall not be necessary for Releasor or his heirs and assigns to take any further action to effectuate the reverter.
It is immediately clear that the above reverter was not technically "automatic", since it required an affirmative act by the Releasor/Grantor to trigger it. It is further noted that the sentence uses the expression "Releasor and his heirs and assigns" twice, but does not use "and his heirs and assigns" in denominating who shall have the power to trigger the reverter. Expressio unius est exclusio alterius. The interpretation that the power of termination was personal to the grantor is consonant with the language of the Affidavit referred to as Schedule B. There is no reason the grantor could not have written this affidavit in language susceptible to the alternate interpretation. It could have been written so as to accommodate either the grantor or his heirs and assigns. But it wasn't. The plain language of the deed, interpreted harmoniously and with reference to proper rules of construction, compels the conclusion that the power of termination was personal to the grantor, and the affidavits filed by the executors and trustees (Plaintiff's Exhibits 4 and 5) are nullities. This interpretation is also consistent with the evidence that the grantor was reluctant to delegate authority, and that he expressed the intention that the property would be owned by the grantee at his death. CT Page 3630
The issue of the grantor's power of termination has been discussed by the parties in terms of the applicability of the doctrine of "waiver". "Technically the doctrine of `waiver' is not applicable to either type of defeasible estate. It is more proper to say that the owner of the power has `elected' not to terminate than to say he `waived' his power." Dunham, 20 Chi. L. Rev. at 225. See also Ewart, Waiver Redistributed 151-67 (1917); 1 Simes, Future Interests 170 (1936). Here the act necessary to effectuate the grantor's election was clearly described in the deed and such election did not take place; no further discussion of the applicability of "waiver" is required.
 VII.
Although not raised by the parties the court believes the case warrants discussion as to whether the grant was a testamentary disposition and thus void under the Statute of Wills.
Conn. Gen. Stat. 45-171 et. seq. set forth various requirements relative to testamentary dispositions. The potential impact on this case is that, should the conveyance under scrutiny here be found to be testamentary, the law requires such a transfer to be in the form and with the formalities of a will. In view of the court's prior analysis that the title vested in the grantee at the time the deed was recorded it therefore was not of a testamentary nature, the power of termination notwithstanding. Where a grantor's right to revest title in himself is gone after his death, as it was here, his power of termination was not a right of recall. Because the grantee had the power to extinguish the grantor's right of termination by taking up residence in the property, the deed will not be deemed a testamentary disposition. Dotsis v. Manniello, 17 Misc.2d 118, 184 N.Y.S.2d 16, 17 (1958). See also Schenck v. Dibel, 242 Iowa 1289, 50 N.W.2d 33, 35 (1951) (Where a deed is sufficient on its face to convey, the presence of language subjecting the grantee's possession to such conditions as to reserve some power over the property in the grantor until his death does not convert the deed into a testamentary document.); 129 ALR 11-54. The deed was a valid inter vivos conveyance, not a testamentary instrument.
The court therefore declares Virginia D'Addario to be the owner in fee simple of the premises described in the complaint known as 75 Williams Street, Trumbull.
FLYNN, JUDGE CT Page 3631